FIFTH DIVISION
May 14, 2010

No. 1-08-2600

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 04 CR 26713 |
| | ) | |
| OMAR SCOTT, | ) | The Honorable |
| | ) | John J. Fleming, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

In a spark of creativity, appellant maintains that his purported right to choose whether to testify was impeded by the trial judge's blanket policy of deferring rulings on motions limiting the admissibility of prior convictions. Although we presumed the issue had been laid to rest by our supreme court in *Averett*[1], the changing contours of the landscape require that we again weigh in on this resurrected saga. We also address appellant's additional claim that the trial court erred in admitting irrelevant and prejudicial testimony.

Following a jury trial, defendant, Omar Scott was convicted of first degree murder and aggravated battery with a firearm and sentenced to consecutive terms of 60 years' and 15 years'

---

[1] *People v. Averett*, Nos. 106362, 106621 cons. (April 15, 2010).

imprisonment, respectively. Additionally, defendant was found guilty of felony unlawful use of a weapon by a felon during a simultaneous bench trial and sentenced to an additional consecutive term of three years' imprisonment. For the following reasons, we affirm the judgment of the circuit court and correct the mittimus.

## BACKGROUND

Defendant was charged, *inter alia*, with first degree murder, aggravated battery with a firearm, and unlawful use of a weapon by a felon. The charges stemmed from a shooting at the Time Out Lounge at 8216 South Vincennes in Chicago on October 2, 2004, wherein Ike Steptore was killed and Gernard Fulton was seriously injured. Prior to trial, the trial court granted defendant's motion to sever the unlawful use of a weapon by a felon count. Defendant elected to proceed by a bench trial on that count and agreed to have it resolved simultaneously with the jury trial on the remaining counts. The jury returned verdicts finding defendant guilty of first degree murder and aggravated battery with a firearm. Likewise, the trial court found defendant guilty of unlawful use of a weapon by a felon. He was sentenced to 60 years' imprisonment for first degree murder and a consecutive sentence of 15 years' imprisonment for aggravated battery with a firearm. The record of proceedings reflects an additional sentence of 3 years' imprisonment on the unlawful use of a weapon by a felon conviction. However, this sentence is not clearly delineated in the mittimus. In the instant appeal, defendant does not challenge the sufficiency of the evidence. Therefore, we will review only those facts necessary to an understanding and resolution of the issues raised.

Ike Steptore's wife, Cordelia, testified as a life/death witness. She explained that Ike had

gone to the Time Out Lounge for the birthday party of Roderick Love, her brother. Shortly after 1 a.m., she received a call from her niece concerning Ike. Cordelia immediately went to the Time Out Lounge and found Ike in an ambulance. He was conscious and able to talk. According to Cordelia, Ike referred to her by a nickname and said, "Dee Wee, I love you." She rode in the ambulance to Christ Hospital. Ike underwent surgery, but later died due to his injuries.

Gernard Fulton testified that she met a friend at the Time Out Lounge on the night of October 1, 2004. She and her friend were there to have a drink. Fulton observed a party going on in the back portion of the bar. She also danced one time with Ike Steptore, who introduced himself to her that night. After dancing, as Fulton returned to her seat at the bar she noticed a commotion behind her, which sounded like two men arguing. Fulton did not turn to look at the argument. Instead, she decided to leave the bar. As she was about to put on her jacket, she "felt a hot sensation in [her] left back area" and fell down, without having heard gunshot. A great deal of commotion and screaming ensued. Fulton's friend was down on the floor with her as Fulton went in and out of consciousness. She could not feel anything as she laid on the floor and eventually blacked out.

Fulton regained consciousness in the ambulance, but did not open her eyes. She responded to the paramedics' questions, but was unable to move. She underwent surgery to remove a bullet and for a partially shattered spine, requiring spinal fusion. Following the surgery, Fulton was paralyzed from the neck down. She spent the next 12 days in the hospital, until she was transferred to the Rehabilitation Institute of Chicago (RIC). Fulton remained at RIC for two months receiving therapy to teach her to walk and take care of herself.

At this point in Fulton's testimony, defense counsel sought a side bar and objected to the testimony's relevance to the charge of aggravated battery with a firearm. Counsel maintained that the nature and extent of treatment were not relevant. The objection was noted, but overruled.

Fulton additionally testified that she participated in a study where a robot was used to help her learn to move her limbs. Other therapies involved stretching her legs and "working [her] out." She eventually regained some movement in her right arm. Fulton did not regain the ability to walk while she was an inpatient at RIC. Thereafter, she was discharged and continued out-patient therapy for nine months. After extensive physical and occupational therapy lasting about one year, Fulton began to walk again.

Fulton explained how her injuries forced her to move in with her sister because she could no longer access her prior third-floor residence due to the paralysis. She likewise described how she was unable to return to work because of her physical limitations following the shooting. Additionally, as of the time of trial, she had not regained full use of her limbs. When asked what sorts of things she is no longer able to do, Fulton responded, "That's a long list of things. But things that I like to do like ride a bike, dance, skate, doing dishes, my hair."

Rodrick Love was at the Time Out Lounge on the night of the incident for a birthday party for another brother-in-law, Charles Tyler. He and Ike shared a round of drinks. From his position about four to five feet from the dance floor, Love could see Ike arguing with another man. Love did not know what precipitated the argument. The situation escalated and Love approached. Another individual, named Rock, also approached. The men began pushing and

shoving, but due to Ike's size and positioning, Love could not tell who was doing what. Other patrons in the area implored the men to quit arguing.

According to Love, "I asked the other guy to let it go. I told him it was family." The "other guy" Love referred to was defendant, whom he did not know. Defendant responded, "it's no dam [sic] family of mine." Defendant then produced a dark colored handgun from the right side of his body, possibly from his pocket. Love grabbed his arm and the gun discharged. Defendant continued to try to raise his arm and the gun fired a second time. Then, Love and Rock "all came over with [their] full body weight. And the third shot went wild or whatever. And [defendant] came underneath us and he ran for the door." Love was unable to give chase because he was supporting Ike, who was leaning against him. Love yelled for the bouncers to stop defendant and called to his other brother-in-law that Ike had been shot. The crowd in the bar began stampeding toward the front door. Some of the people were "trampling" and "jumping" over a woman who fell backwards and had blood coming from her head.

Love stayed with Ike until the police and paramedics arrived. Ike lifted his shirt to show Love that he had been shot in the stomach. Love remained at the bar after Ike was transported to the hospital. Thereafter, he spoke with investigators, gave a statement to an assistant State's Attorney, and identified defendant in a lineup.

Chicago police sergeant Dwayne Betts testified that he was at the Time Out Lounge, while off duty in the early morning hours of October 2, 2004. He was invited there to meet another Chicago police officer, then-Sergeant Eddie Johnson. Just as he received his drink order, Betts heard a commotion, consisting of fighting and yelling, coming from the dance floor. He

had only been at the bar for about 10 minutes. Simultaneous to the DJ announcing last call, three gunshots rang out in rapid succession. According to Betts, "Pandemonium erupted in the lounge" amongst the patrons trying to flee. Betts exited the bar along with the crowd. Once outside, he waited for Johnson to exit. While he waited, Betts asked another patron, Mike Kraft or "Shug," if he knew whom the shooter was.

Based on Shug's response, Betts proceeded northbound down Vincennes. He saw defendant walking alone at a fast pace, as if speed walking. Betts increased his pace, announced his office, and yelled for defendant to stop. Defendant continued walking away and Betts saw him toss a dark metallic object that he believed to be a handgun to a grassy area by the sidewalk. Thereafter, defendant stopped and Betts got him onto the ground. A uniformed officer arrived, provided handcuffs, and defendant was placed in custody. Betts then located the gun defendant jettisoned in the adjacent grassy area.

ANALYSIS

Defendant initially claims his constitutional right to testify in his own defense was effectively denied by the trial court's refusal to rule on his motion *in limine* to bar the use of prior convictions for the purposes of impeachment. According to defendant, the trial court's actions were part of a "blanket policy" employed by the judge. Finding that practice problematic, defendant asserts that, "With no guidance from the trial court as to whether the State would be allowed to use his prior convictions for impeachment, [defendant] elected not to testify before the jury." In response, the State argues this claim was not properly preserved because defendant did not testify and, regardless, he was neither denied a fair trial nor prejudiced by the trial court's

practice.

Our review of the record discloses two occasions when the issue arose before the trial court. The first took place over year before the trial commenced. At the time, the following colloquy took place:

"[Defense counsel]: *** I have a couple of motions in limine to file on this case. There is a Montgomery motion ***.

THE COURT: All right. Under Montgomery, let's start with that one. Any convictions within the time limit?

[Defense counsel]: Yes, there are some convictions within the time limit.

THE COURT: Anything that's outside the time limit obviously would not be introduced.

Now, what I normally do on Montgomery issues is pursuant to the U.S. Supreme Court case of Luce, L-U-C-E, I decide after the Defendant testifies whether or not I would allow them in based on the Luce case, that the testimony could be something where the convictions wouldn't bear on his testimony at all. It's something that should be balanced, the U.S. Supreme Court said in determining whether or not they go in, *** there's no prejudice if he does testify, and after the testimony I'll be in all [*sic*] better position to weigh all the facts, whether or not the probative value is outweighed by any prejudicial value.

I don't know what all the convictions are, but, I wouldn't let any convictions come in for impeachment purposes or some of them, or whatever."

The matter was addressed a second time immediately before jury selection, where this additional colloquy occurred:

"[Assistant State's Attorney]: The only other issue I can think of that maybe should be dealt with, there was affirmative defense that was filed in this case, and I'm sure there is a possibility that [defendant]'s going to testify.

There's a provable that fits within the 10-year Montgomery rule, and I don't know how would you like to deal with that, if that something that's not timely at this time?

THE COURT: You brought that up already.

[Defense counsel]: I filed a motion, a Montgomery motion, on a previous court date. I don't remember which one, and I believe the ruling was deferred.

THE COURT: What I do, I can't even think of the case - - Luce, basically, Luce case, the Judge I guess said it couldn't come in, and then the Appellate Court said we couldn't - - it was the Supreme Court agreed, we couldn't evaluate without seeing the testimony.

I think if you apply that all the way down to the Trial Court, it comes down to that I can't really do the proper balancing act until I actually hear the testimony, observe the witness testify, then I can do the whole Montgomery balancing act taking in all those criteria."

According to defendant, the trial court's approach was problematic because it constituted a "blanket policy" of refusing to rule on such a motion prior to the defendant testifying.

Moreover, defendant asserts that his claim should not be barred because of his choice not to testify. He likewise contends a refusal to rule on the merits of his claim "would violate his right to a remedy under the Illinois Constitution." Furthermore, defendant claims the precedent relied on by courts to resolve similar issues are not applicable to his case and incorrectly conclude that a defendant forfeits review of a trial court's "refusal" to rule on a motion *in limine* by not testifying.

In *People v. Montgomery*, our supreme court considered, and ultimately adopted, the substance of the proposed draft of Federal Rule of Evidence 609. *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971). The draft provided that a witness's credibility could be attacked based on criminal convictions:

> " 'only if the crime, (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.' " *Montgomery*, 47 Ill. 2d at 516, 268 N.E.2d at 698, quoting 51 F.R.D. 391.

The court then referenced the committee comments to the proposed rule, focusing upon the methodology and importance of the balancing test required by the rule. *Montgomery*, 47 Ill. 2d at 517-19, 268 N.E.2d at 699-700.

Thereafter, in *Luce*, the Supreme Court addressed the question of whether a defendant who did not testify could seek redress from a district court's denial of a motion to preclude the

admission of a prior conviction for impeachment. *Luce v. United States*, 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984). There, the district court determined Luce's prior conviction fell within the purview of Federal Rule of Evidence 609, but denied the motion reasoning that "the nature and scope of [Luce's] trial testimony could affect the court's specific evidentiary rulings." *Luce*, 469 U.S. at 39-40, 83 L. Ed. 2d at 446, 105 S. Ct. at 462. The defendant chose not to testify and was convicted by the jury. The Court of Appeals for the Sixth Circuit affirmed the convictions, noting, however, that when a defendant does not testify it would not review the *in limine* ruling. *Luce*, 469 U.S. at 40, 83 L. Ed. 2d at 447, 105 S. Ct. at 462.

At the outset, the Supreme Court agreed that the defendant's decision not to testify was integral to the analysis. Had the defendant testified and been impeached by evidence of a prior conviction, there would have been a complete record upon which to review. *Luce*, 469 U.S. at 41, 83 L. Ed. 2d at 447, 105 S. Ct. at 463. Yet, as the Court cautioned, "A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context." *Luce*, 469 U.S. at 41, 83 L. Ed. 2d at 447, 105 S. Ct. at 463. In cases postured like *Luce*, the court cannot perform the balancing required pursuant to Federal Rule of Evidence 609 because "the court must know the precise nature of the defendant's testimony, which is unknowable when *** the defendant does not testify." *Luce*, 469 U.S. at 41, 83 L. Ed. 2d at 447, 105 S. Ct. at 463. Moreover, the Court observed:

> "Any possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what

was contained in the defendant's proffer." *Luce*, 469 U.S. at 41, 83 L. Ed. 2d at 447, 105 S. Ct. at 463.

Furthermore, the *Luce* Court noted that an accused's decision whether to testify " 'seldom turns on the resolution of one factor.' " *Luce*, 469 U.S. at 42, 83 L. Ed. 2d at 448, 105 S. Ct. at 463, quoting *New Jersey v. Portash*, 440 U.S. 450, 467, 59 L. Ed. 2d 501, 515, 99 S. Ct. 1292, 1301 (1979) (Blackmun, J., dissenting, joined by Burger, C.J.). It is inappropriate, then, to assume that the adverse ruling on the *in limine* motion motivated a defendant's decision not to testify. *Luce*, 469 U.S. at 42, 83 L. Ed. 2d at 448, 105 S. Ct. at 463. Moreover, even if a commitment was made by a defendant to testify if his motion is granted, this is "virtually risk free because of the difficulty of enforcing it." *Luce*, 469 U.S. at 42, 83 L. Ed. 2d at 448, 105 S. Ct. at 463. The Court reasoned:

> "Requiring that a defendant testify in order to preserve Rule 609(a) claims will enable the reviewing court to determine the impact any erroneous impeachment may have had in light of the record as a whole; it will also tend to discourage making such motions solely to 'plant' reversible error in the event of conviction." *Luce*, 469 U.S. at 42, 83 L. Ed. 2d at 448, 105 S. Ct. at 464.

The Supreme Court thus concluded that a defendant must testify in order to preserve a claim of improper impeachment by a prior conviction. *Luce*, 469 U.S. at 43, 83 L. Ed. 2d at 448, 105 S. Ct. at 464.

In *People v. Whitehead*, our supreme court considered whether the trial court's denial of two motions *in limine* – one seeking to limit the cross-examination of a defense psychiatric

11

witness and a second aimed at precluding introduction of admissions by the defendant – prevented defendant from presenting evidence on his behalf. The defense in *Whitehead* proposed to make an offer of proof as to what defendant's testimony would be on direct examination, which the trial court declined to accept. Neither the psychiatric expert nor defendant testified at trial. *People v. Whitehead*, 116 Ill. 2d 425, 442-44, 508 N.E.2d 687, 693-94 (1987). The supreme court determined the defendant's claim evaded review for this precise reason. *Whitehead*, 116 Ill. 2d at 443, 508 N.E.2d at 693. The court explained:

> "Counsel must stand on their objections and call the witnesses, thus opening the possibility that an erroneous decision on the scope of examination might occur and require review by a reviewing court, or forgo calling the witnesses and adopt an alternative strategy. But defense counsel may not have it both ways by altering their trial strategy to make the best of the trial court's order, depriving the reviewing court of a reviewable record, and still maintain that the order was erroneously entered."
>
> *Whitehead*, 116 Ill. 2d at 443-44, 508 N.E.2d at 693.

Adhering to the rationale of *Luce*, the court candidly acknowledged that in the absence of a fully-developed record – *i.e.*, one containing testimony from the defendant or witness – determining whether the court would ultimately allow the State to use the impeaching matter or if the State would even use it was purely conjectural. *Whitehead*, 116 Ill. 2d at 444, 508 N.E.2d at 694.

More recently, in *People v. Averett*, the First District reluctantly applied the principle, established by *Luce* and *Whitehead*, that a defendant must testify in order to obtain review of a trial court's "refusal to rule" on a motion *in limine*. *People v. Averett*, 381 Ill. App. 3d 1001,

1019-20, 886 N.E.2d 1123, 1139-40 (2008), *appeal allowed*, 231 Ill. 2d 671, 904 N.E.2d 981 (2009), Nos. 106362, 106621 cons. (April 15, 2010). In *Averett*, our third division strongly criticized "[the] developing trend in the circuit court of Cook County to refuse to rule on such motions." *Averett*, 381 Ill. App. 3d at 1019, 886 N.E.2d at 1139. Nonetheless, the *Averett* court determined it was constrained by *stare decisis* to follow *Luce* and its progeny and thus concluded Averett's claim was unreviewable. *Averett*, 381 Ill. App. 3d at 1020, 886 N.E.2d at 1140.

The Supreme Court of Illinois next considered this issue in *People v. Patrick*, 233 Ill. 2d 62, 908 N.E.2d 1 (2009), involving the consolidated appeals of Robert Patrick and Ezekiel Phillips. Defendant Patrick moved *in limine* to bar the introduction of prior convictions. During a pretrial hearing, the trial judge refused to rule on his motion claiming that to do so would constitute an advisory opinion. *Patrick*, 233 Ill. 2d at 66, 908 N.E.2d at 3-4. During the defense case, Patrick's counsel once more sought a ruling on the motion. The trial court again declined to do so without first hearing defendant's direct examination, stating that this is how he proceeded in " 'every single case.' " Patrick elected to testify and was, in turn, impeached with his prior convictions. *Patrick*, 233 Ill. 2d at 66, 908 N.E.2d at 4. As to defendant Phillips, the trial court partially ruled on his motion *in limine*, but deferred passing on the remaining convictions pending the defendant's testimony. Phillips decided not to testify based on that ruling. *Patrick*, 233 Ill. 2d at 67, 908 N.E.2d at 4.

In analyzing the respective positions of Patrick and Phillips, the supreme court weighed the guiding precedent bearing upon the issue before it as well as the rationale embracing motions *in limine*:

"A criminal defendant's right to testify on his own behalf, or not to testify at all, is rooted in the fifth, sixth, and fourteenth amendments of the United States Constitution. *Rock v. Arkansas*, 483 U.S. 44, 51-53, 97 L. Ed. 2d 37, 46-47, 107 S. Ct. 2704, 2708-09 (1987). A defendant's decision whether to testify is an important tactical determination. *Brooks v. Tennessee*, 406 U.S. 605, 612, 32 L. Ed. 2d 358, 364, 92 S. Ct. 1891, 1895 (1972). A defendant who chooses to testify faces serious risks of impeachment and may open the door to otherwise inadmissible evidence. *Brooks*, 406 U.S. at 609, 32 L. Ed. 2d at 362, 92 S. Ct. at 1893. The decision to testify ultimately belongs to the defendant but is generally made after consultation with counsel. *People v. Medina*, 221 Ill. 2d 394, 403 (2006). Making the important decision to testify without an opportunity to evaluate the actual strength of the State's evidence restricts the defense in planning its case. *Brooks*, 406 U.S. at 612, 32 L. Ed. 2d at 364, 92 S. Ct. at 1895.

Obviously, defendants benefit from rulings on the admissibility of their prior convictions made before they decide to testify. First, early rulings provide defendants with the information necessary to make the critical decision whether to testify on their own behalf and to gauge the strength of their testimony. See *People v. Averett*, 381 Ill. App. 3d 1001 (2008). Second, early rulings permit defendants and defense counsel to make reasoned tactical decisions in planning the defense by: (1) informing the jury whether the defendant will testify; (2) portraying the defendant in a light consistent with prior convictions being admitted or not admitted; and (3)

anticipatorily disclosing prior convictions during the defendant's direct examination, thereby reducing the prejudicial effect. [Citation.]" *Patrick*, 233 Ill. 2d at 69-70, 908 N.E.2d at 5-6.

After consulting similar precedent from other jurisdictions, the *Patrick* court concluded that, in most cases, the necessary balancing mandated by *Montgomery* will be possible prior to trial. However, where trial courts are possessed of sufficient information in advance of trial and still do not rule, they commit an abuse of discretion. The court predicted that the pretrial rulings would be possible "in all but the most complicated of cases." *Patrick*, 233 Ill. 2d at 73, 908 N.E.2d at 7-8.

Applying the foregoing analysis to the cases before it, the supreme court concluded that defendant Patrick was entitled to a new trial. It was the sense of the court that "Patrick's decision to testify was critical because he relied on a theory of self-defense." *Patrick*, 233 Ill. 2d at 75-76, 908 N.E.2d at 9. Furthermore, "If Patrick had known before testifying that his prior convictions were going to be admitted he may have decided not to testify, or at least he could have informed the jury earlier of the prior convictions to lessen the negative impact." Additionally, the adverse impact of the impeachment was further heightened by the State's repeated argument that the jury should not believe a three-time convicted felon. *Patrick*, 233 Ill. 2d at 75-76, 908 N.E.2d at 9.

Conversely, as to defendant Phillips, the court concluded his claim evaded review. Consistent with the holdings of *Luce* and *Whitehead*, the court reiterated that a defendant must testify and obtain a definitive ruling on his motion *in limine* to allow proper review on appeal. *Patrick*, 233 Ill. 2d at 78-79, 908 N.E.2d at 10-11. The court noted that, "[T]his court ruled in

*Whitehead* that defendant must take the risk and present the testimony for the issue to be reviewable." In so concluding, the court rejected the dissent's claim that *Luce* and *People v. Thompkins*, 161 Ill. 2d 148, 193, 641 N.E.2d 371, 392 (1994), did not control. *Patrick*, 233 Ill. 2d at 79, 908 N.E.2d at 11; see *People v. Thompkins*, 161 Ill. 2d 148, 193, 641 N.E.2d 371, 392 (1994) (defendant's claim of error was forfeited due to failure to testify).

Following in the wake of *Patrick*, the supreme court issued a *per curiam* order announcing its decision to allow the consolidated appeals of the appellate court opinions in *Averett* and *People v. Tucker*. People v. Patrick, Nos. 104077, 104445 cons. (May 27, 2009) (*per curiam* order on denial of motion to reconsider denial of petition for rehearing). Specifically, the court granted leave to appeal Averett's and Tucker's cases:

> "[T]o consider whether relief might be available to a defendant, even if he chose not to testify, if the trial court had a 'blanket policy' not to rule on the motion *in limine* in advance of the defendant deciding not to testify. Importantly, in both Averett and Tucker, it was readily discernible that the trial court had such a blanket policy." Patrick, slip op. at 1-2.

Thereafter, on April 15, 2010, on the eve of oral argument in the case *sub judice*, the supreme court released its consolidated opinion in *Averett*. *People v. Averett*, Nos. 106362, 106621 cons. (April 15, 2010). At the outset, the court reiterated its adherence to *Patrick* – that a trial court's use of a blanket policy to defer rulings on this type of motion *in limine* was an abuse of discretion. *Averett*, slip op. at 7. The court further explained:

> "The critical question presented here is whether relief may be available on

appeal despite the defendants' choice against testifying because the trial courts had a 'blanket policy' of not ruling on motions *in limine* before the defendants testified." *Averett*, slip op. at 7.

In the instant case, defendant maintains that the trial court's blanket policy of deferring its ruling constituted a "structural error," thereby requiring automatic reversal without a defendant having to demonstrate prejudice. Although the *Averett* court indeed concluded the error committed in having such a policy was a serious one, the court nonetheless reasoned that it was "not comparable to the errors recognized by the Supreme Court as structural." *Averett*, slip op. at 8. Rather, "it is simply an error within the trial proceedings." *Averett*, slip op. at 8. Moreover, analytical hindsight demonstrated that the error of deferring *in limine* rulings could be quantified, which was confirmed by the analysis of harmless error undertaken by the court in *Patrick*. Consequently, the court concluded there was no structural error in deferring rulings on motions *in limine* and, therefore, automatic reversal was not required. *Averett*, slip op. at 8-9.

The defendant further asserts that the trial court's policy violated his constitutional right to testify. However, the *Averett* court found no merit to the claim of any constitutional violation. *Averett*, slip op. at 9. Notably, the court determined that the trial judge's approach did not prevent the defendants from testifying. Rather:

"They were required to weigh the possibility of being impeached with their prior convictions along with other factors in determining whether to testify. The defendants' constitutional right to testify was not violated by any deterrent effect on their testimony due to the risk of being impeached with their prior

17

convictions." *Averett*, slip op. at 10.

Similarly, the blanket policy did not deny the defendants the " 'guiding hand of counsel.' "
*Averett*, slip op. at 11. Therefore, defendants did not present issues of constitutional error
"subject to review on appeal despite their choice against testifying at trial." *Averett*, slip op. at
11.

The *Averett* court likewise considered the defendants' argument that plain-error analysis
would permit review of their claims of error. In rejecting this assertion, the court observed,
"While the plain-error rule may be applied to bypass normal forfeiture principles, it cannot be
applied here because defendants' decisions not to testify go beyond normal forfeiture." *Averett*,
slip op. at 12. The court harkened back to that portion of the *Patrick* decision holding that a
defendant's failure to testify rendered the issue unreviewable. *Averett*, slip op. at 7, citing
*Patrick*, 233 Ill. 2d at 79, 908 N.E.2d at 11. Relying on well-settled precedent, the court
reasoned that, without testimony from a defendant, courts of review would be left to speculate
about the nature and content of the testimony, as well as the prosecution's cross-examination.
*Averett*, slip op. at 12, citing *Patrick*, 233 Ill. 2d at 78-79, 908 N.E.2d at 10-11, quoting
*Whitehead*, 116 Ill. 2d 443-44, 508 N.E.2d at 693. In accordance with prevailing standards,
"Defendants must testify and obtain a definitive ruling on their motions for the issue to be
reviewable on appeal." *Averett*, slip op. at 12, citing *Patrick*, 233 Ill. 2d at 79, 908 N.E.2d at 11.

The court also rejected Averett's claim that he did not forfeit his challenge to the trial
court's *in limine* ruling by virtue of his testimony at a pretrial motion to suppress evidence.
*Averett*, slip op. at 14. Again, the court relied on the speculative nature of this assertion.

18

Specifically, the court expressed concern over questions such as whether the trial court would allow impeachment, whether any prior convictions would be used by the prosecutor, or if the State would argue for defendant's conviction based on the prior convictions. *Averett*, slip op. at 14. Notably, the approach adopted by the court mirrored the observations in *Luce*, thus cautioning against defendants " 'hav[ing] it both ways' by altering trial strategy to make the best of the order [as to motions *in limine*] and then, if the trial strategy proves unsuccessful, claiming on appeal that the order was erroneously entered." *Averett*, slip op. at 14, citing *Patrick*, 233 Ill. 2d at 79, 908 N.E.2d at 10-11, quoting *Whitehead*, 116 Ill. 2d at 443-44, 508 N.E.2d at 693.

Lastly, we address defendant's argument that denying review of his claim is violative of article I, section 12, of the Illinois Constitution. In reliance upon this provision, defendant claims he is entitled to a remedy for the wrong sustained by virtue of the trial court's error. Yet, in *Averett*, the supreme court noted the court's long-held position that article I, section 12, "only expresses a philosophy *** and does not require a certain remedy in any specific form." *Averett*, slip op. at 15. Because this provision is "aspirational," there is no requirement that defendants find a remedy for the trial court's error. *Averett*, slip op. at 15.

In sum, the *Averett* court recognized the use of a blanket policy, which constituted an abuse of discretion, was the basis for both Averett's and Tucker's decisions not to testify. *Averett*, Nos. 106362, 106621 cons., slip op. at 15 (April 15, 2010). Nonetheless:

> "In our view, Tucker and Averett were in the same position faced by Phillips
>
> prior to trial. Each was required to wait for a ruling on the admissibility of prior
>
> convictions for impeachment purposes until after testifying. Thus, each of them

19

faced the same strategic and tactical decisions and the same uncertainty over whether they would be impeached with their prior convictions if they chose to testify. Therefore, in accordance with our decision in Phillips' case, we conclude that the trial courts' decisions to defer ruling on the defendants' motions under a blanket policy is unreviewable on appeal because the defendants chose not to testify at trial."
*Averett*, slip op. at 15-16.

In the case *sub judice*, defendant maintains that his right to knowingly exercise "his constitutional right to choose whether to testify" was unnecessarily impeded by the trial court's blanket policy of deferring its ruling on *in limine* motions. Understandably, defendant has not favored us with any authoritative precedent supportive of his argument. In *People v. Rosenberg*, our supreme court recognized that defendants are often faced with difficult decisions when weighing the pros and cons of testifying at trial. Yet, the necessity of making those decisions does not inevitably deprive defendants of any constitutional rights. *People v. Rosenberg*, 213 Ill. 2d 69, 81, 820 N.E.2d 440, 448 (2004). Notwithstanding the peril faced by defendants through impeachment with prior convictions, the court reasoned, "That a defendant may decide not to testify in a given case *** does not give rise to a constitutional violation." *Rosenberg*, 213 Ill. 2d at 81, 820 N.E.2d at 448. The *Averett* court likewise concluded that the defendants' claims did not involve constitutional error subject to review on appeal despite their choice against testifying at trial. *Averett*, slip op. at 11.

The fact remains that in the proceedings below defendant did not testify. Established precedent guides us to the conclusion that this fact, standing alone, is sufficient for us to abstain

from reviewing defendant's claim of error. The reason is manifest. If defendants were permitted to substantively pursue claims of error on any matter that did not take place during trial, the dual objectives of finality of judgments and judicial economy would be seriously frustrated. Moreover, defendant's attempts to remove his case from the firm grasp of precedent are unavailing. Our position is entirely consistent with the abiding principle reiterated by our supreme court in *Averett*. See *Averett*, slip op. at 12 ("Our decision in *Patrick* makes clear that a defendant's choice not to testify in these circumstances goes beyond normal forfeiture. The rationale of *Patrick* does not allow the defendants to 'have it both ways' by altering their trial strategies to make the best of the trial courts' deferrals of their rulings and later maintain on appeal that they are entitled to new trials because the deferrals of the rulings were erroneous").

Next, defendant argues the admission of certain testimony by Ike Steptore's widow and victim Gernard Fulton denied him a fair trial. It is, however, well recognized that the admission of evidence is left to the sound discretion of the trial. *People v. Phillips*, 392 Ill. App. 3d 243, 272, 911 N.E.2d 462, 489 (2009). We will not disturb a trial court's decision on the admissibility of evidence unless it constitutes an abuse of discretion. *People v. Robinson*, 217 Ill. 2d 43, 62, 838 N.E.2d 930, 941 (2005). To preserve evidentiary issues for review, defendants must object contemporaneously as well as in a posttrial motion. *People v. Lewis*, 234 Ill. 2d 32, 40, 912 N.E.2d 1220, 1225 (2009); see also 725 ILCS 5/116-1 (West 2006).

Generally, the failure to object results in forfeiture of claims on appeal; however, forfeiture is not an absolute bar to our review. Instead, forfeiture presents limitations on the parties, not reviewing courts. *People v. Davis*, 213 Ill. 2d 459, 470, 821 N.E.2d 1154, 1161

(2004). Furthermore, Supreme Court Rule 615(a), which codifies the plain-error doctrine, provides an exception affording review for those issues otherwise subject to procedural default. *Lewis*, 234 Ill. 2d at 42, 912 N.E.2d at 1226-27; 134 Ill. 2d R. 615(a). Our supreme court explained the doctrine's operation in *People v. Piatkowski*:

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the serousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007), citing *People v. Herron*, 215 Ill. 2d 167, 186-87, 830 N.E.2d 467, 479 (2005).

It is axiomatic that "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." 134 Ill. 2d R. 615(a). "Essentially, the fairness of the trial must be undermined." *People v. Keene*, 169 Ill. 2d 1, 17, 660 N.E.2d 901, 910 (1995). It is upon the defendant to satisfy the burden of persuasion as to either prong of the doctrine. *People v. Naylor*, 229 Ill. 2d 584, 593, 893 N.E.2d 653, 659 (2008). Where a defendant cannot establish plain error, we must honor the procedural default. *Keene*, 169 Ill. 2d at 17, 660 N.E.2d at 910.

The threshold of our analysis necessarily focuses upon whether an error in fact occurred. *Lewis*, 234 Ill. 2d at 43, 912 N.E.2d at 1227, citing *People v. Walker*, 232 Ill. 2d 113, 124-25,

902 N.E.2d 691, 697 (2009).  We, therefore, consider the substance of each claim of error. *Walker*, 232 Ill. 2d at 125, 902 N.E.2d at 697; *Lewis*, 234 Ill. 2d at 43, 912 N.E.2d at 1227.

At a pretrial hearing, the defense stated its opposition to the proposed testimony of Cordelia Steptore.  Over the defense's objection, the trial court permitted the State to offer Cordelia's testimony about her final conversation in the ambulance with Ike Steptore.  During the trial testimony, though, the defense did not interpose an objection to the testimony.  In his brief, defendant asserts that this testimony was offered "over objection."  This contention is marginally misleading.  A careful review of the record clarifies that the issue was addressed in the pretrial hearing, it was not addressed contemporaneously with the testimony, but was alleged in defendant's supplemental motion for a new trial.  Interestingly, the posttrial motion alleges, in part, "The Court erred when it allowed the witness Cordelia Steptore to testify to Ike Steptore's last words to her.  (Trans 1/9/08 pg 31 line 20 – pg 32 line 1) (Objected to by defense on 1/8/08 pg. 20, line 19). )."  Clearly, the objection was not contemporaneous.  The subsequent parenthetical references are at best confusing and at worst utterly misleading as to whether there was an objection to the testimony as it was being offered.

Our review of the record persuades us that this testimony was not admitted in error.  The circumstances and substance of it were not such as would be expected to arouse the jury's passion or prejudice.  Ike Steptore's affectionate words to his wife were simply compatible with the nature of their relationship as husband and wife.  There was nothing about those words that was unexpected or outrageous in any fashion.  We are reminded of our supreme court's observations in *People v. Harris*: " ' "[c]ommon sense tells us that murder victims do not live in

a vacuum and that, in most cases, they leave behind family members." [Citation.] ' " *People v. Harris*, 225 Ill. 2d 1, 31, 866 N.E.2d 162, 180 (2007), quoting *People v. Hope*, 116 Ill. 2d 265, 275-76, 508 N.E.2d 202, 206 (1986). The supreme court in *Harris* observed the testimony of family members admitted by the State in that case "did nothing to make it appear material to establishing guilt or innocence." *Harris*, 225 Ill. 2d at 32, 866 N.E.2d at 180. The same is true in the present case. If nothing else, Cordelia's recounting of the conversation confirmed the connection between the victim and the person who testified as a life/death witness on his behalf. Importantly, we presume that jurors consider only relevant evidence and follow the instructions given them. See *People v. Illgen*, 145 Ill. 2d 353, 376, 583 N.E.2d 515, 525 (1991) ("Faith in the ability of a properly instructed jury to separate issues and reach a correct result is the cornerstone of the jury system"), citing *People v. Foster*, 76 Ill. 2d 365, 378, 392 N.E.2d 6, 11 (1979).

Even were we to conclude it was error to permit this testimony, the plain-error doctrine would not operate to overcome the forfeiture of the claim. The evidence in the present case was not closely balanced and we cannot conclude the fairness of the proceedings was undermined by the admission of this testimony. See *Piatkowski*, 225 Ill. 2d at 564-65, 870 N.E.2d at 411. Thus, we fail to discern the applicability of either prong of the doctrine to the instant claim. *Naylor*, 229 Ill. 2d at 593, 893 N.E.2d at 659. Since defendant cannot establish plain error, it is required that we enforce the procedural default. *Keene*, 169 Ill. 2d at 17, 660 N.E.2d at 910.

Defendant invokes a similar claim of error as to the testimony of Gernard Fulton concerning "her injury, rehabilitation process, and the ways in which her life has changed since the shooting." Defendant did object to this testimony at trial in a side bar conference. The trial

24

judge noted the objection, but overruled it finding the testimony was relevant to Fulton's injuries and the extent of them. Unquestionably, Fulton's condition at the time of trial coupled with the efforts undertaken to achieve it are inextricably linked with the initial gunshot wound. To sustain the charge of aggravated battery with a firearm, the State was required to prove the defendant, "in committing a battery, knowingly or intentionally by means of the discharging of a firearm (1) causes *any injury* to another person." (Emphasis added.) 720 ILCS 5/12-4.2(a) (West 2004).

Fulton's testimony to be sure was more extensive than that of Cordelia Steptore. However, the distinction to be drawn between the two is at once apparent. The injury to Ike Steptore was fatal and final. The injury to Fulton was a continuing one. The injury she suffered, the progress she made, and the related changes in her life were all linked to one another and equally caused by defendant. Just as the fact that Fulton was apparently totally paralyzed immediately after the shooting would be relevant to establish "any injury," the fact that the nature and consequences of her injury changed over time is equally relevant. Consequently, we conclude the trial court did not abuse its discretion in allowing this testimony.

Although the issue was not addressed by either party, we note an error in the mittimus, which lists concurrent sentences for counts III and IV, each charging defendant with first degree murder, and further provides that these two counts merge. Moreover, the mittimus omits any reference to the conviction of unlawful use of a weapon by a felon and resulting three-year sentence. In order to clarify the mittimus, and consistent with our powers pursuant to Supreme Court Rule 615 (b)(1) (134 Ill. 2d R. 615(b)(1)), we vacate the sentence indicated for count IV and order the mittimus corrected to reflect the merger of count IV into count III, with a single

sentence imposed on count III.  Likewise, we order the mittimus further corrected to include the consecutive sentence for unlawful use of a weapon by a felon on count XIII.  In all other respects, the judgment of the circuit court is affirmed.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County and order the mittimus to be corrected.

Affirmed.

FITZGERALD SMITH and HOWSE, JJ., concur.

1-08-2600

| | |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>           Plaintiff-Appellee,<br><br>v.<br><br>OMAR SCOTT,<br><br>           Defendant-Appellant. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | No. 1-08-2600<br>Appellate Court of Illinois<br>First District, FIFTH Division<br><br>May 14, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE TOOMIN delivered the opinion of the court:<br><br>FITZGERALD SMITH and HOWSE, JJ.      concur [s]<br><br>           dissent[s] |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable   John J. Fleming, Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorneys for Plaintiff-Appellee-People of the State of Illinois: Anita Alvarez<br>           State's Attorney<br>           County of Cook<br>           Room 309-Richard J. Daley Center,<br>           Chicago, IL  60602<br><br>Of counsel: James E. Fitzgerald, Samuel Shim, Peggy Ann Gill-Curtin<br>Attorneys for Defendant-Appellant-Omar Scott:   Michael J. Pelletier<br>           State Appellate Defender<br><br>           Patricia Unsinn<br>           Deputy Defender<br>           David T. Harris<br>           Assistant Appellate Defender<br>           Office of the State Appellate Defender |

1-08-2600

203 North LaSalle Street - 24th Floor
Chicago, IL 60601