2026 IL App (1st) 242564-U

No. 1-24-2564

Order filed April 30, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 1312601 |
| | ) | |
| MICHAEL PITTS, | ) | Honorable |
| | ) | Joanne F. Rosado, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's 30-year sentence for attempted first degree murder is affirmed over his contention that the trial court may have relied upon an improper factor in aggravation. Where the trial court merged three counts, the sentences imposed on those counts are vacated pursuant to the one-act, one-crime doctrine and the mittimus is corrected accordingly.

¶ 2    Following a bench trial, defendant Michael Pitts was found guilty of two counts of attempted first degree murder, one count of aggravated battery, and one count of aggravated discharge of a firearm. The trial court merged the counts into one count of attempted first degree

murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2022)) (count 2) and sentenced Pitts to 30 years in prison thereon. On appeal, Pitts contends that the case must be remanded for resentencing where "there is a question" as to whether the merged counts improperly influenced his sentence. In the alternative, he contends that the mittimus must be amended to reflect a single conviction and sentence. For the reasons that follow, we affirm Pitts's conviction and sentence on count 2; vacate the sentences imposed on the other, merged counts; and order correction of the mittimus.

¶ 3       Pitts's conviction arose from an October 23, 2022, shooting in Chicago. Following arrest, Pitts was charged with five crimes against Corey Edwards: attempted first degree murder (count 1), attempted first degree murder while personally discharging a firearm (count 2), attempted first degree murder while personally discharging a firearm that proximately caused great bodily harm (count 3), aggravated battery (count 4), and aggravated discharge of a firearm (count 5).

¶ 4       We set forth the trial evidence relevant to the issue on appeal.

¶ 5       At trial, Corey Edwards testified that, on the night in question, Davonte Brough drove him and a man he knew only as "Face" to a residential location where they intended to purchase marijuana. Edwards rode in the front passenger seat and Face sat behind him. Pitts, whom Edwards had met "four times possibly" and knew as Brough's brother, approached their vehicle on foot. Edwards described what happened next:

> "[Pitts] came from the front of the car. [Brough said], like, He ain't going to shoot, that's my brother. And he shot me. I looked at my hand. That's where the bullet first went. Looked at my hand. Looked at him right in his face. *** He came on the side of the car, on my side of the car. I was on the passenger side. He was like over—he came around this way and started shooting."

¶ 6    Face pushed Edwards's head down and Brough drove off. Edwards realized that, in addition to being shot in the hand, he had also been shot in the leg, back, and stomach. Edwards further testified that Face said his hand was grazed, but the court sustained Pitts's hearsay objection to that testimony. Edwards added that he lost consciousness in the vehicle. He eventually had surgery and was hospitalized for almost a month.

¶ 7    The State published a portion of a video recorded by a doorbell camera, which was admitted into evidence, and which this court has reviewed. The video depicts a stretch of residential street with people sitting in and standing between parked vehicles. A dark-colored sedan drives from left to right across the screen. A man in a green shirt appears on the right side of the screen and walks across the street in front of the moving sedan. He then turns toward the passenger side of the sedan, someone yells indecipherable words, and the sedan accelerates while the man raises his right arm and runs after the sedan. As the sedan and the man leave the camera's view, seven shots can be heard.

¶ 8    In court, Edwards identified Pitts as the man in the green shirt in the video.

¶ 9    Brough, who stated several times that he did not want to participate in the trial, testified that, on the night in question, he drove Edwards and "Face," whom he also knew as "Cortez," to a residential location to buy marijuana. Brough's brother, Pitts, was present, "[m]ingling with some people." Brough saw Pitts cross the street but did not see him draw a weapon. He heard gunshots and drove fast to get away. He did not know that anyone in the vehicle had been hit until "Corey and Face said that he was shot." After arriving at the hospital, Brough found a bullet hole in the hood of his jacket. When asked whether Face had been hit, Brough answered, "from my understanding he was grazed." The trial court sustained Pitts's objection to speculation.

¶ 10    Brough testified that Pitts was wearing green on the night of the shooting. When the State re-published footage from the doorbell camera, Brough identified Pitts as the man in the green shirt in the video. The State introduced into evidence and published text messages Brough and Pitts exchanged after the shooting. In the messages, Brough told Pitts that he was in the car and both he and Face had been grazed. When Pitts replied that he would "never shoot [his] brother," Brough wrote back, "But you did ***. And face [*sic*]."

¶ 11    Pitts testified that, on the night in question, he was not at the location of the shooting but, rather, was at home. He denied that he was the man in the green shirt in the video and denied shooting at the sedan. He also denied knowing Edwards or ever having seen him before he testified at trial and denied having sent Brough the text messages that were introduced into evidence.

¶ 12    The trial court found Pitts guilty on all counts save count 3, explaining that great bodily harm had not been proved where Edwards did not testify as to why he was hospitalized or what surgery he underwent. The court found that Edwards testified credibly, that Brough was distraught over his testimony and "did not want to be here," and that Pitts's testimony was a "complete lie." Pitts filed a posttrial motion, which the trial court denied.

¶ 13    A presentence investigation (PSI) report was prepared. Among other things, the PSI report reflected that Pitts's criminal history included three felonies (criminal damage to government property, manufacture/delivery of fentanyl, and possession of a stolen motor vehicle) and two misdemeanors (resisting/obstructing a peace officer and attempted possession of a controlled substance), and that he was on probation at the time of the shooting.

¶ 14    At sentencing, the State argued in aggravation that Pitts had an "extensive history of prior criminal activity," that his conduct caused or threatened serious harm to the three people in the

vehicle and the bystanders on the street, and that a significant sentence would be necessary to deter others. The State added that Pitts was on probation at the time of the shooting, and that he showed no remorse.

¶ 15    In mitigation, the defense argued that Pitts was 26 years old, had completed high school and some college, provided care for his son, and worked two jobs. The defense also argued that Pitts's three prior felony convictions were for nonviolent offenses. The defense asked the court not to apply any firearm enhancements and to order that its sentence be served at 50%. Pitts declined to speak in allocution.

¶ 16    The court reviewed the facts of the case. In the course of summarizing Edwards's testimony, it noted, *inter alia*, that Edwards said Face "received a graze wound to his hand." When synopsizing Brough's testimony, the court noted Brough "didn't realize he had a bullet hole through his shirt" until arriving at the hospital. The court later commented that Pitts's actions "could have ended [Brough's] life just as quickly as those bullets were flying through his vehicle."

¶ 17    The court noted it had found both Edwards and Brough to be "extremely credible" and Pitts not credible, as "[e]verything he said was a lie." It specified that when Pitts testified, "[h]e was very cold, disassociated with the facts *** [and] tried to pretend as if none of this really was him, nothing actually happened." In contrast, Edwards and Brough had described the incident as "what it actually was, and that was Mr. Pitts being angry about something, taking out a gun, and trying to kill Mr. Edwards."

¶ 18    Further, the court acknowledged it was in possession of the PSI report.

¶ 19    The court stated that it was applying the "gun enhancements" and announced its sentencing decision as follows:

"So looking at the [PSI] report, the history, character, and attitude of the defendant, the evidence and the arguments presented, having considered all the statutory matters and the aggravation and mitigation, and due to the circumstances, I find the following:

That as to Count Number 1, the defendant will be sentenced to 25 years in the Illinois Department of Corrections, mandatory supervised release in the amount of 18 months.

As to Count 2, the defendant will be sentenced to 30 years in the Illinois Department of Corrections, mandatory supervised release 18 months.

As to Count 4, the defendant will be sentenced to 30 years in the Illinois Department of Corrections, mandatory supervised release 18 months.

And as to Count 5, he will be sentenced to 10 years in the Illinois Department of Corrections, mandatory supervised release 18 months.

Count 1, 4, and 5 will merge into Count 2, for a total of 30 years in the Illinois Department of Corrections, mandatory supervised release 18 months."

¶ 20     The mittimus reflects that Pitts was "adjudged guilty" of four offenses and sentenced as follows: count 1, attempted murder, 25 years; count 2, attempted murder, 30 years; count 4, aggravated battery, 30 years; and count 5, aggravated discharge of a firearm, 10 years. The mittimus further provides that "COUNTS 1, 4, AND 5 MERGED INTO COUNT 2." The half sheet from the day of sentencing also includes a hand-written notation bracketing the respective sentences for counts 1, 2, 4, and 5 and stating, "All merge into Ct 2."

¶ 21     Pitts filed a written motion to reconsider sentence, arguing that his 30-year sentence was excessive "[i]n light of the evidence presented at trial and to the Court." He further asserted that

the court failed to consider the sentencing objective of restoring him to useful citizenship, as well as his "character and attitudes," which indicated he was unlikely to commit another crime. The trial court denied the motion.

¶ 22    On appeal, Pitts contends that "there is a question" as to whether the merged guilty findings on counts 1, 4, and 5 improperly influenced the court's 30-year sentence on count 2. He argues that, where the mittimus listed four separate convictions and sentences, the record "reflects the possibility that the sentences imposed for the merged offenses affected the 30-year sentence imposed on count 2." He asserts that the fact that the 30-year sentence listed for count 4 is the same length as the 30-year sentence imposed on count 2 "indicat[es] the merged aggravated battery conviction was significantly relied upon in determining the sentence for the most serious offense."

¶ 23    Pitts also argues that the court's references at sentencing to Face having been grazed, and to Brough's hoodie having a bullet hole in it, show that "the court seemed to focus on the fact that there were victims other than Edwards." He maintains that, where he was not charged with any offense against Face or Brough, the court's references "raise the possibility, despite the merger, that [his] 30-year sentence on Count 2 was influenced by the similar sentences *** imposed for offenses the trial court may have believed (incorrectly) were committed against persons other than Edwards." Pitts concludes that "it cannot be determined from the record what effect the convictions and sentences of four separate felonies for the same act influenced the ultimate sentence [he] received." As a result, he requests that this court remand for resentencing.

¶ 24    The State responds that Pitts has forfeited this contention where he did not object at sentencing or raise the issue in his motion to reconsider sentence. In his reply brief, Pitts argues that we may reach the issue as a matter of plain error. See *People v. Hardy*, 2020 IL App (1st)

172485, ¶ 77 (plain error may be raised for the first time in a reply brief). Pitts asserts that plain error exists because the evidence at sentencing was close and because the integrity of the judicial process is affected by "a sentence based on consideration of the same act more than once in aggravation to increase a sentence."

¶ 25 The plain error doctrine is a narrow and limited exception to forfeiture. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). In the sentencing context, a defendant must show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing. *Id.* Whether forfeiture may be avoided under either of these theories requires us first to determine whether a clear error occurred. *People v. Garcia*, 2023 IL App (1st) 220524, ¶ 18. Here, we find no clear error.

¶ 26 Whether a court relied on an improper factor in imposing a sentence presents a question of law that we review *de novo*. *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 48. In considering whether reversible error has occurred based on the trial court having allegedly considered an improper sentencing factor, a reviewing court should make its decision based on the record as a whole and not focus on a few words or statements of the trial court. *Id.* ¶ 51. If a trial court considered improper factors, the sentence may nevertheless be affirmed if the reviewing court "can determine from the record that the weight placed on the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People v. Heider*, 231 Ill. 2d 1, 21 (2008).

¶ 27 After reviewing the record as a whole, we find no indication that the trial court increased Pitts's sentence on count 2 due to its guilty findings on counts 1, 4, and 5. Rather, it is clear from the record that the court fashioned sentences for each of the counts separately. At the sentencing

hearing, the court orally announced the sentences one by one and then immediately stated that counts 1, 4, and 5 merged into count 2. In keeping with its pronouncement of sentence, the court also specified on the mittimus and the half sheet that the four separate sentences would merge.

¶ 28 The transcript shows that at sentencing, the court specifically considered the facts of the case, the PSI report, and Pitts's history, character, and attitude. The court also stated it had considered all the statutory factors in mitigation and aggravation. See 730 ILCS 5/5-5-3.1, 5-5-3.2 (West 2024). Further, the court properly noted Pitts's lack of credibility when he testified at trial. See *People v. Alexander*, 239 Ill. 2d 205, 213 (2010) (listing the defendant's credibility among the factors to be weighed by the sentencing court). Nothing in the court's comments indicates it relied on any improper factor when fashioning Pitts's sentence. Based on the record as a whole, we find the trial court did not consider an improper sentencing factor. As such, there is no error.

¶ 29 In coming to our conclusion, we reject Pitts's argument that the court's choice of 30 years as the sentence for both aggravated battery and attempted first degree murder "indicat[es] the merged aggravated battery conviction was significantly relied upon in determining the sentence for the most serious offense." Pitts's argument is unsupported and conclusory, and we fail to see how the circumstance of sentences being of equal length demonstrates that one influenced the other.

¶ 30 We also reject Pitts's argument that the court's references at sentencing to bullets having grazed Face and having pierced a hole in Brough's clothing signal that its 30-year sentence on count 2 "was influenced by the similar sentences *** imposed for offenses the trial court may have believed (incorrectly) were committed against persons other than Edwards." First, the harm caused or threatened to individuals other than the victim was a proper statutory factor for the court to

consider in aggravation. See 730 ILCS 5/5-5-3.2(a)(1) (West 2024); *People v. Brown*, 2019 IL App (5th) 160329, ¶ 22 (section 5-5-3.2(a)(1) is not restricted to harm or potential harm to the victim). Here, it is undisputed that Pitts fired at a vehicle with multiple occupants, all of whom were endangered.

¶ 31    Second, as the State notes, the fact that the court merged the counts demonstrates that it understood the charges all pertained to one victim, *i.e.*, Edwards. See *People v. Leach*, 2011 IL App (1st) 090339, ¶ 30 (the one-act, one-crime rule only applies to multiple convictions for acts against a single victim); *People v. Battle*, 2023 IL App (1st) 231838, ¶ 30 (the trial court is presumed to know the law and apply it properly). Finally, the court stated at sentencing that Edwards and Brough had testified as to what the crime "actually was, and that was Mr. Pitts being angry about something, taking out a gun, and trying to kill Mr. Edwards." The court did not describe anyone other than Edwards as the victim. For all these reasons, Pitts's argument that the court misunderstood who was identified as the victim in the charges and improperly considered in aggravation the harm or threat of harm to other people in the vehicle he shot at is unpersuasive.

¶ 32    Having considered the record of the sentencing hearing as a whole, we cannot find that the trial court considered an improper factor in imposing sentence. Without error, the plain error doctrine does not apply and the issue remains forfeited. See *People v. Hood*, 2016 IL 118581, ¶ 18 (absent error, there can be no plain error).

¶ 33    Pitts contends, in the alternative, that where the trial court merged the guilty findings on counts 1, 4, and 5 into count 2, the mittimus must be amended to reflect a single conviction and sentence on count 2. He acknowledges that he did not raise this claim in the trial court but asserts, accurately, that violations of the one-act, one-crime doctrine are reviewable under the plain error

doctrine. See, *e.g.*, *People v. Smith*, 2019 IL 123901, ¶ 14. The State concedes the issue and we agree.

¶ 34     As noted, the trial court stated at sentencing that counts 1, 4, and 5 merged into count 2. However, despite the merger, the court sentenced Pitts to 25 years' imprisonment on count 1; 30 years' imprisonment on count 4; and 10 years' imprisonment on count 5. Because the court merged those counts, sentence should not have been imposed on them. Regardless, the record supports the parties' position that counts 1, 2, 4, and 5 all arose out of the single physical act of Pitts shooting Edwards. Therefore, Pitts's simultaneous convictions violate the one-act, one-crime rule. See *People v. King*, 66 Ill. 2d 551, 566 (1977). Accordingly, we vacate Pitts's sentences on counts 1, 4, and 5 and order the mittimus corrected to reflect the vacatur and a single conviction and sentence on count 2. Remand is unnecessary, as we may directly order the clerk of the court to correct the mittimus pursuant to our authority under Illinois Supreme Court Rule 615(b)(1) (eff. Jan. 1, 1967). See *People v. Scott*, 401 Ill. App. 3d 585, 602 (2010) (vacating sentence imposed on merged count and ordering correction of mittimus).

¶ 35     For the reasons explained above, we affirm Pitts's conviction and sentence on count 2, vacate the sentences imposed on counts 1, 4, and 5, and order correction of the mittimus.

¶ 36     Affirmed in part; vacated in part; mittimus corrected.